UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| CHESTER REYNOLDS, | : | Case No. 1:08-cv-329 |
|---|---|---|
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 20-27) (ALJ's decision)).

**I.**

On July 7, 2004, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of August 1, 2003, due to cervical spine and lumbosacral spine degenerative disc disease, bilateral carpal tunnel syndrome, polyneuropathy, and decreased diffusion capacity. (Tr. 65-68, 248-51).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of his claims on the state agency level, Plaintiff requested a hearing *de novo* before an ALJ. A hearing was held on October 2, 2006, at which Plaintiff appeared with counsel and testified. (Tr. 267-329). A vocational expert, Mr. Kenneth Manges, was also present and testified. (Tr. 20). Medical expert, Dr. Arthur Lorber, testified via telephone. (*Id.*)

On February 2, 2007, after considering all of the evidence of record, the ALJ issued a decision denying Plaintiff's applications, finding that he retained the residual functional capacity for a limited range of sedentary work and therefore was not entitled to disability benefits. (Tr. 17-27). The Appeals Council denied Plaintiff's request for review, thereby making this decision the final decision of the Commissioner. (Tr. 6-9).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2004.

2. The claimant has not engaged in substantial gainful activity since August 1, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: cervical spine and lumbosacral spine degenerative disc disease; bilateral carpal tunnel syndrom; polyneuropathy; and decreased diffusion capacity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the requirements of work activity except as follows: He can lift/carry/push/pull up to 10 pounds occasionally and up to 5 pounds frequently. He can in combination stand and/or walk up to 2 hours per 8-hour workday. He can only occasionally stoop, kneel, crouch, climb ramps/stairs, perform work requiring the forceful use of the lower extremities, or reach above shoulder level with the upper extremities. The claimant should never crawl, climb ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery. The claimant should avoid concentrated exposure to fumes, noxious odors, dusts, and gases. His job should not require reading, math, or writing.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 2, 1965 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 1, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-27).

In sum, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations, and was therefore not entitled to a period of disability, DIB, or SSI. (Tr. 27).

On appeal, Plaintiff argues that: (1) the ALJ erred in determining Plaintiff's residual functioning capacity ("RFC"); and (2) the ALJ failed to give controlling weight or at least substantial weight to the treating doctor's opinion. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff maintains that the ALJ erred in determining his RFC.

The record indicates that:

On June 9, 2004, Plaintiff arrived at the emergency room complaining of pain in his left shoulder blade with radiation to his left arm and numbness in his left hand. (Tr. 112). Plaintiff also had chest pain. (Tr. 114). Plaintiff's neurological examination showed that he was alert and cooperative and that his sensory and motor functions were intact. (*Id.*) Plaintiff's EKG was normal and a CT scan of the chest was essentially normal. (Tr. 114-15). Plaintiff was diagnosed with musculoskeletal left upper back in chest pain secondary to thoracic radiculopathy. (Tr. 115).

A few days later, on June 14, 2004, Plaintiff returned to the emergency room with complaints of continued chest pain and left arm and hand numbness. (Tr. 130). An x-ray of Plaintiff's cervical spine showed significant narrowing at C5-6 with degenerative joint disease. (Tr. 132). Plaintiff was diagnosed with left upper back and chest pain with intermittent left arm parenthesis and cervical radiculopathy. (*Id.*) Plaintiff was released to return to work provided he did not work overhead, climb stairs or ladders, perform prolonged driving or riding in a motor vehicle, or do heavy lifting, and was released to regular duty as of June 25, 2004. (Tr. 134).

On July 6, 2004, a follow up examination showed no significant back pain, joint pain, joint swelling, stiffness, or limited range of motion. (Tr. 139). Plaintiff had no complaints of weakness or numbness. (*Id*.)

In September 2004, Plaintiff began treatment with Omar M. Ossmann, M.D. for complaints of neck pain with radiation to the shoulder and left hand, low back pain, and intermittent tingling in the legs. (Tr. 208-09). Plaintiff reported that his pain became worse with activities and medications did not provide relief. (Tr. 208). Plaintiff had 5/5 strength in his upper extremities with giveaway in the left shoulder and mild weakness in his left hand grip. (*Id*.) Plaintiff had very mild muscle wasting of the small hand muscle bilaterally. (*Id*.)

Plaintiff's strength in the lower extremities was 5/5 and his deep tendon reflexes were +2 throughout. (Tr. 208). His sensory examination was intact but some ataxia (lack of coordination) was noted. (*Id*.) Plaintiff's gait was normal. (*Id*.) Plaintiff had moderate muscle spasm in the paravertebral regions of the spine, but his range of movement was normal. (Tr. 209). His range of movement in his left shoulder was somewhat limited, especially with elevation of the shoulder. (*Id*.) Cervical and lumbar spine MRI's were ordered and Plaintiff was given a prescription for Relafen. (*Id*.)

On September 21, 2004, an MRI of Plaintiff's cervical and lumbar spine showed moderate degenerative changes at C5-C6 with moderate narrowing at the root canal, but

no focal disc protrusion or compromise. (Tr. 143). There was also a small central disc protrusion at L5-S1 without evidence of nerve root compromise. (Tr. 144). EMG testing showed evidence of cervical polyradiculopathy and polyneuropathy. (Tr. 210). Dr. Ossmann noted that these findings did not show significant radiculopathy. (*Id.*) He noted that the etiology of Plaintiff's symptoms remained unclear, but thought that his diffuse muscle pain might be related to an autoimmune process causing arthritis and myalgia. (*Id.*)

On January 3, 2005, Plaintiff was seen for a follow-up complaining of tingling in his fingers and pain. (Tr. 211). Plaintiff reported difficulty performing daily activities, but stated that Vicodin had provided some relief and had allowed him to perform daily activities. (*Id.*) Upon examination, Plaintiff had tenderness in his shoulder and cervical paravertebral area with decreased range of motion in the cervical and lumbar spine. (*Id.*) Plaintiff's reflexes were present, and his gait was normal but antalgic and cautious. (*Id.*) Dr. Ossmann noted that most likely Plaintiff's cervical polyradiculopathy was related to degenerative disease of the cervical spine. (*Id.*)

On January 13, 2005, a state agency physician, Diane C. Manos, M.D., reviewed the medical evidence of record and opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, alternate between sitting and standing throughout the day to relieve pain and discomfort, and perform unlimited pushing and pulling. (Tr. 151).

In February 2005, Plaintiff reported a worsening of his pain with physical therapy. (Tr. 212). Upon examination, Plaintiff had tenderness in his shoulder and paravertebral cervical spine. (*Id.*) Dr. Ossmann indicated that he did not typically use Vicodin for chronic treatment of pain and advised him to use a neck collar at bedtime and prescribed Neurontin. (*Id.*)

On April 11, 2005, Plaintiff continued to complain of numbness in his legs and pain in his shoulders and neck. (Tr. 213). However, Dr. Ossmann opined that he did not believe Plaintiff's current finding of peripheral neuropathy would be enough for him to apply for disability. (*Id.*)

On April 13, 2005, x-rays of Plaintiff's shoulders showed slight inferior spurring at the AC joint in the left shoulder and a normal right shoulder. (Tr. 161). Plaintiff's EMG showed neuropathy which Dr. Bornovali speculated could be due to Plaintiff's former heavy alcohol use. (Tr. 202).

In June 2005, Dr. Ossmann noted Plaintiff's cachectic appearance. (Tr. 214). Plaintiff had mild weakness in his left arm especially with finger grip. (*Id.*) Plaintiff's reflexes were diminished throughout; however, an x-ray of the left should showed no significant changes. (*Id.*)

On March 17, 2006, Dr. Bornovali completed disability forms on Plaintiff's behalf. (Tr. 217-18). Dr. Bornovali listed Plaintiff's diagnoses as peripheral neuropathy and chronic back pain. (Tr. 217). He opined that Plaintiff could stand/walk for one hour

a day, for 30 minutes at a time, sit for one hour a day for 30 minutes at a time, and occasionally lift and carry between six and ten pounds. (Tr. 218). Dr. Bornovali opined that Plaintiff was markedly limited in his ability to push and pull, bend, reach, handle, and perform repetitive foot movements. (*Id.*) He concluded that Plaintiff was unemployable and that this condition was expected to last for twelve months or more. (*Id.*)

On May 1, 2006, Dr. Bornovali again offered his opinion as to Plaintiff's work-related limitations. (Tr. 221-24). Dr. Bornovali offered the same limitations as he had in March 2006, but also indicated that Plaintiff could never climb, stoop, crouch, kneel or crawl, and could occasionally balance. (Tr. 222). Dr. Bornovali opined that Plaintiff's ability to see, reach, handle, finger, and push were affected by his impairment and that he could not perform delicate tasks. (Tr. 223).

On June 15, 2006, Plaintiff continued to report weakness in his hands and legs, but he was feeling much better overall after starting Lyrica.[2] (Tr. 225). Plaintiff was falling less and was able to use his hands more. (*Id.*) Upon examination, he was nearly cachectic with reduced muscle bulk throughout. (*Id.*) Knee reflexes were +1, ankle reflexes were absent, and upper extremity reflexes were +1. (*Id.*) Plaintiff walked with a limping gait. (*Id.*) Dr. Ossmann diagnosed multiple pain syndrome, idiopathic radiculopathy by EMG, and neuropathy. (*Id.*)

On November 15, 2006, an MRI of Plaintiff's cervical spine showed multilevel degenerative changes, a dorsal annular tear within the L3-4 disc, and a possible

---

[2] Lyrica is used in treating chronic pain disorders such as fibromyalgia.

degenerative cyst at L3, which did not represent a disc extrusion. (Tr. 243-46).

Plaintiff claims that the ALJ erred because although the objective test findings support a limitation on his dexterity, the ALJ did not limit Plaintiff's handling or fingering except as to use above shoulder level. (Tr. 23-24). Specifically, Plaintiff claims that his testimony concerning his problems with his hands and dropping objects is consistent with Dr. Bornovali's limitations on Plaintiff's reaching, handling, fingering, and pushing (Tr. 223) and the objective EMG findings that Plaintiff had "findings consistent with severe demyelinating peripheral neuropathy" (Tr. 196) and "distal latencies and F responses for ulnar, median motor were prolonged and, their amplitudes were reduced." (Tr. 149).

The record reflects that the ALJ considered Plaintiff's alleged limitations in handling, fingering, pushing and reaching, and credited them to the extent he found Plaintiff was limited to lifting, carrying pushing, and pulling no more than 10 pounds occasionally and five pounds frequently, and could not reach above shoulder level. (Tr. 28). The ALJ also considered that objective testing did not show evidence of clear nerve root impingement despite Plaintiff's allegations of extreme pain and limited functioning. (Tr. 24). Although Plaintiff claimed that he frequently dropped things, the record showed that his grip strength was only mildly weakened in his left hand and that his motor strength was 5/5 in both hands. (Tr. 208, 214). The ALJ considered that, although there was evidence of neuropathy, Plaintiff's neurologist, Dr. Ossmann opined that his finding of peripheral neuropathy was not enough for him to apply for disability. (Tr. 24-25, 213).

-10-

The ALJ also considered that even after Plaintiff experienced exacerbations of pain requiring emergency room attention, his treating physician recommended that Plaintiff return immediately to work with some restrictions and return to regular duty within a short time. (Tr. 25 citing Tr. 134).

The ALJ also weighed Dr. Lorber's testimony that even though the EMG testing showed some impairment in sensation that did not relate to motor function, Plaintiff should still be able to do light level work. (Tr. 25, 309). The record also showed that after Plaintiff began taking Lyrica, he felt much better overall and was able to use his hands more. (Tr. 225). Finally, Plaintiff testified that he was able to drive short distances which seemed inconsistent with his alleged inability to maintain a grip with his hands. (*Id.*)

The issue is not whether the record *could* support a finding of disability, but rather whether the ALJ's decision *is* supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

Upon careful review, the undersigned finds that substantial evidence exists to

support the ALJ's RFC.

**B.**

For his second assignment of error, Plaintiff claims that the ALJ failed to give controlling weight, or at least substantial weight, to the treating doctor's opinion.

An ALJ must give the opinion of a treating source controlling weight if s/he finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Id.* Thus, the ALJ was not required to give deference to the treating physician's unsupported opinions.

An ALJ is not required to give controlling weight to the opinion of a treating source if the opinion is not well-supported by the clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Accordingly, the ALJ reasonably gave little weight to Dr. Bornovali's opinions.

The ALJ gave Dr. Bornovali's RFC assessments little weight for two reasons:

-12-

(1) Dr. Bornovali's opinion differed from "diagnostic testing, other physician's opinions and the record generally"; and (2) Plaintiff had not seen Dr. Bornovali since October 2005 and Dr. Bornovali's RFC assessment was from May 2006. (Tr. 25). Plaintiff claims that this reasoning is flawed because: (1) Dr. Bornovali was the only doctor to take into account all of Plaintiff's limitations; and (2) the ALJ misunderstood the testimony of the Plaintiff and, in fact, Plaintiff's last visit with Dr. Bornovali was on March 17, 2006 (Tr. 237), only 45 days before Dr. Bornovali's RFC assessment dated May 1, 2006. (Tr. 221-224).

In assigning little weight to Dr. Bornovali's opinions of functional limitation, the ALJ considered that Dr. Bornovali opined at one point that Plaintiff's abilities to reach, handle, finger, and push were affected by his impairment and that he could not perform delicate tasks (Tr. 223) and, on another occasion, opined that Plaintiff was markedly limited in his ability to push, pull, and handle. (Tr. 218). The ALJ reasonably assigned little weight to those opinions because he found that they were not consistent with diagnostic testing, opinions of other physicians of record, or the record generally. (Tr. 25). 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). In so finding, the ALJ also considered that Plaintiff's treating neurologist opined that Plaintiff's peripheral neuropathy was not sufficiently severe so as to qualify him for disability benefits. (Tr. 213). While Plaintiff argues that Dr. Bornovali's opinions were, in fact, consistent with EMG findings, Plaintiff's argument ignores the Dr. Lorber's testimony which explained

-13-

that the EMG test results were not in and of themselves indicative of functional limitation. Rather, according to Dr. Lorber's testimony, functional limitation is determined by the accompanying clinical findings. (Tr. 317).

Here, Dr. Lorber considered the EMG findings and entertained symptoms which could possibly be consistent with those EMG findings, but also noted that the clinical evidence did not support the degree of functional limitation Plaintiff alleged. (Tr. 317). For example, although there was some evidence of muscle wasting, Plaintiff's strength was 5/5 in his upper extremities, and he had only mild weakness in his left hand grip. (Tr. 208, 214). His right grip strength was normal, and he was still able to drive a car short distances demonstrating the ability to grip and turn a key, grip a steering wheel, grip door handles, and operate any internal instruments. (Tr. 208).

In any event, the 2004 EMG findings predate Dr. Ossmann's opinion that Plaintiff's current findings would not be enough for him to apply for disability. (Tr. 213). Additionally, the state agency physician and the testifying medical expert, after reviewing all of the medical evidence, opined that Plaintiff could perform a limited range of light work despite his impairments. (Tr. 151). Therefore, the ALJ reasonably found that Dr. Bornovali's opinion was not supported by the objective medical evidence and was inconsistent with other evidence in the record and, as such, assigned it little weight. *See* 20 C.F.R. § 404.1527(d)(2) (treating physician opinion is entitled to controlling weight when it is well-supported by objective medical evidence and is consistent with the other substantial evidence of the record); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530

(6th Cir. 1997).

Plaintiff further argues that Dr. Lorber's testimony substantiates Dr. Bornovali's opinion that Plaintiff had severe limitations in handling, fingering, pushing, or reaching. (Doc. 15 at 7). However, again, Plaintiff's argument distorts Dr. Lorber's testimony. Dr. Lorber conceded that many functional limitations were possible based on the EMG findings; however, he explained that in this case, the clinical findings did not support the significant functional limitations alleged by Plaintiff and that, in his opinion, Plaintiff could still perform a limited range of light work despite these findings. (Tr. 23-26).

Plaintiff also argues that the ALJ erred in considering that Plaintiff had not seen Dr. Bornovali since October 2005 when, in fact, Plaintiff saw Dr. Bornovali on March 17, 2006. (Doc. 15 at 9). In so arguing, Plaintiff concedes that there was confusion during the administrative hearing regarding whether he had last seen Dr. Bornovali in October 2005. (*Id.*) Regardless, the fact that Plaintiff saw Dr. Bornovali one additional time prior to his May 2006 opinion bears little impact on the weight the ALJ assigned to Dr. Bornovali's opinion. Rather, as explained extensively above, the ALJ gave many reasons for discounting Dr. Bornovali's opinion.

Accordingly, there is substantial evidence in the record supporting the ALJ's finding that Plaintiff was not disabled.

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability, disability insurance benefits, and supplemental security income, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:  July 14, 2009              s/ Timothy S. Black
                                  Timothy S. Black
                                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CHESTER REYNOLDS, | : | Case No. 1:08-cv-329 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).