# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Chester L. Reynolds,        )
                            )
        Plaintiff,          ) Case No. 1:08-CV-329
                            )
    vs.                     )
                            )
Michael J. Astrue,          )
Commissioner of Social      )
Security,                   )
                            )
        Defendant.          )

## O R D E R

This matter is before the Court on Magistrate Judge Black's Report and Recommendation of July 14, 2009 (Doc. No. 20) and Plaintiff Chester L. Reynolds' objections to the Report and Recommendation (Doc. No. 26). In his Report and Recommendation, Judge Black found that the Administrative Law Judge's ("ALJ") determination that Plaintiff is not disabled, and therefore, not entitled to receive disability insurance and supplemental security income benefits, was supported by substantial evidence. Therefore, Judge Black recommended that the ALJ's determination be affirmed and that this case be closed. For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED**. The Court **ADOPTS** the Report and Recommendation. The Court concludes that the Administrative Law Judge's determination that Plaintiff is not disabled was supported by substantial evidence. Accordingly, the ALJ's determination that Plaintiff is not disabled is **AFFIRMED.**

I. Background

The issue presented by Plaintiff's objections is whether the ALJ erred in the weight he assigned to the opinion of his treating physician, Dr. Seref Bornovali. Plaintiff contends that had the ALJ given appropriate weight to Dr. Bornovali's opinion that he is restricted from repetitive use of his hands, the ALJ would have to have concluded that he is disabled under the Social Security regulations because he cannot perform the jobs identified by the vocational expert.

Plaintiff filed a claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 7, 2004 alleging disability due to cervical spine and lumbosacral spine degenerative disk disease, bilateral carpal tunnel syndrome, polyneuropathy, and decreased diffusion capacity. Plaintiff alleged an onset date of disability of August 1, 2003. There are two principal sources of medical evidence in this case, Dr. Omar Ossmann and Dr. Seref Bornovali.

Plaintiff treated with Dr. Ossmann beginning in September 2004 and continuing through at least June 2006 for neck, back, and shoulder pain, as well as numbness or tingling in his hands and legs. On examination on September 8, 2004, Dr. Ossmann found that Plaintiff had 5/5 strength in the upper extremities and mild weakness in left hand grip. There was mild tenderness in the lower cervical and lower lumbar spine with

2

moderate muscle spasm in the paravertebral region.  Plaintiff had normal range of motion in the cervical and lumbar spine and mild tenderness in the left shoulder.  Range of motion of the left shoulder was somewhat limited.  Dr. Ossmann's impression was possible cervical radiculopathy.  He ordered cervical and lumbar spine MRI's and gave Plaintiff a prescription for Relafen.  Tr. 208-09.

Plaintiff returned to Dr. Ossmann on December 20, 2004.  At that time, Dr. Ossmann stated that a recent EMG showed evidence of cervical polyradiculopathy and polyneuropathy.  However, the MRI of the spine did not show significant radiculopathy.  Plaintiff still complained of pain in his neck, arms, hip, and low back.  Plaintiff had tenderness in the cervical, thoracic, and lumbar spine with decreased range of motion.  Dr. Ossmann stated that the etiology of Plaintiff's symptoms was unclear but that his muscle pain could be related to arthritis or myalgia.  Dr. Ossmann ordered more tests and prescribed Vicodin for breakthrough pain and Bextra to be taken daily.  Tr. 210.

Dr. Ossmann saw Plaintiff on a follow-up evaluation on January 3, 2005.  Plaintiff still complained of pain as well as tingling in his fingers.  Although Plaintiff still complained of a lot of pain, Dr. Ossmann noted that Vicodin provided some relief and enabled Plaintiff to complete his daily activities.

An MRI showed L5/S1 disk protrusion and degenerative disk disease at C5/6. An EMG showed polyradiculopathy at C6-C8 and mild axonal polyneuropathy. Plaintiff had tenderness in the shoulder and in the cervical paravertebral area with decreased range of motion in the cervical and lumbar spine. Dr. Ossmann stated that most likely Plaintiff's cervical polyneuropathy was related to degenerative disk disease of the cervical spine. Dr. Ossmann switched Plaintiff to extra strength Vicodin and started him on Flexeril and Diclofenac. Plaintiff was also to start physical therapy. Tr. 211.

Plaintiff returned to Dr. Ossmann on February 14, 2005. Plaintiff reported no improvement and worsening pain with physical therapy. He reported moderate relief taking Flexeril and diclofenac. Plaintiff still had tenderness in the shoulder and in the cervical paravertebral area with decreased range of motion in the cervical and lumbar spine. Dr. Ossmann recommended that Plaintiff use a neck collar at bedtime and switched him to Neurontin. Tr. 212.

Dr. Ossmann saw Plaintiff again on April 11, 2005. Plaintiff reported an improvement in symptoms. Dr. Ossmann interpreted an EMG as showing possible polyradiculopathy but he suspected polyneuropathy. An MRI showed mild degenerative disease at C5/6 but no evidence of nerve root impingement. Plaintiff's examination was unchanged. Dr. Ossmann stated that

4

Plaintiff's pain was probably related to polyneuropathy of unclear etiology but possiblly due to exposure to toxins from working on a farm. He also felt that Plaintiff's chronic pain was related to degenerative and joint disease of the neck and shoulders. Dr. Ossmann ordered X-rays of Plaintiff's shoulders and suggested that he see an orthopedic physician if they revealed significant shoulder disease. Dr. Ossmann concluded his note by stating, "I don't think his current neurological finding of peripheral neuropathy will be enough for him to apply for disability." Tr. 213.

In June 2005, Dr. Ossmann noted no changes on examination of Plaintiff. Plaintiff's pain was unchanged. Dr. Ossmann observed mild weakness in Plaintiff's left upper extremity, especially with finger grip. Plaintiff's reflexes were diminished throughout. The X-rays, however, did not reveal any significant changes in Plaintiff's shoulders. Dr. Ossmann started Plaintiff on Robaxin and Nortriptyline. Tr. 214.

Dr. Ossmann's office notes from August 2005, January 2006, and February 2006 are handwritten and difficult to decipher. However, in August Plaintiff reported feeling better although he still had pain in his arms and legs. In January, Dr. Ossmann refilled Plaintiff's Lortab prescription but stated that he would like to see if Plaintiff could use a non-steroidal anti-

inflammatory drug instead. In February, Dr. Ossmann refilled Plaintiff's Flexeril prescription. Tr. 215.

Dr. Ossmann's final office note is from June 2006. Plaintiff still complained of weakness in his hands and legs. However, Plaintiff reported feeling much better on Lyrica and that he was able to use his hands more. Tr. 215. Dr. Ossmann continued Plaintiff's medications and referred him to a pain management physician. Tr. 225.

Dr. Bornovali's records cover the period from April 2005 through March 2006. Dr. Bornovali's office notes, Tr. 201-206; 236-50, are handwritten and likewise difficult to read. Dr. Bornovali's notes are consistent with Dr. Ossmann's in that he attributes Plaintiff's pain to neuropathy. In a June 2005 office note, Dr. Bornovali wrote, "I believe patient cannot be employed now or in the future. Will fill out disability papers accordingly." Tr. 204.

Dr. Bornovali provided two physical capacity assessments of Plaintiff. In a form provided to the Ohio Bureau of Job and Family Services, Dr. Bornovali indicated, inter alia, that Plaintiff has marked limitations in pushing, bending, pulling, reaching, handling, and repetitive foot movements. He stated that Plaintiff can stand and walk one hour in an eight hour work day for no more than 30 minutes at time. Dr. Bornovali further stated that Plaintiff can sit for one hour in an eight

hour work day for no more than 30 minutes at a time. Dr. Bornovali said that Plaintiff can lift up to five pounds frequently and up to ten pounds occasionally. Dr. Bornovali concluded that Plaintiff is disabled due to severe neuropathy and back pain. Tr. 217-28.

Dr. Bornovali completed a Medical Assessment of Ability to Do Work-Related Activities on May 1, 2006. Dr. Bornovali again indicated that Plaintiff can only stand and walk an hour a day for 30 minutes at time. He said that Plaintiff can sit for two hours per day for 30 minutes a time. Dr. Bornovali stated that Plaintiff can never climb, stoop, crouch, kneel, or crawl. Dr. Bornovali also indicated, inter alia, that Plaintiff's ability to reach, handle, finger and push are affected by his neuropathy and that he "cannot perform delicate tasks." Tr. 224.

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration. Plaintiff requested and received an evidentiary hearing before an ALJ, which took place on October 2, 2006. The ALJ received testimony from Plaintiff and his sister, a medical expert, Dr. Arthur Lorber, and a vocational expert, Kenneth Manges.

In relevant part, the vocational expert testified that a hypothetical claimant with the residual functional capacity to lift and carry 10 pounds occasionally and five pounds frequently, and was limited to standing no more than two hours per day, with

some environmental restrictions, would be able to perform sedentary positions such as a laborer, hand packager, production worker, sales worker, and truck driver. Tr. 324-325. On cross-examination by Plaintiff's counsel, the vocational expert testified that each of these sedentary jobs involves repetitive use of the hands and that if a claimant was limited from repetitive use of his hands he could not perform these jobs. Tr. 326-27.

On February 2, 2007, the ALJ issued a decision denying Plaintiff's claim for DIB and SSI benefits. The ALJ determined that Plaintiff does not have the RFC to perform his past relevant work as a farm laborer, house framer, or woodworker. The ALJ concluded, however, that Plaintiff has the RFC to lift/carry/push/pull 10 pounds occasionally and 5 pounds frequently; he can stand and walk for up to 2 hours per day; he can occasionally stoop, kneel, crouch, climb ramps or stairs, perform work requiring forceful use of the lower extremities or reaching above the shoulder with the upper extremities; he can never crawl, climb ladders, ropes or scaffolds or work around unprotected heights and hazardous machinery; he should not be exposed to fumes, noxious odors, dust or gases; his work should not require reading, math, or writing. Tr. 24. Based on that RFC, the ALJ found that Plaintiff can perform the jobs of laborer, packer, production worker, and driver and that those

8

jobs exist in significant numbers in the national economy. Therefore, the ALJ determined that Plaintiff is not disabled at the fifth step of the sequential disability evaluation sequence.

In developing Plaintiff's RFC, the ALJ gave little weight to Dr. Bornovali's opinions because they were not consistent with the diagnostic testing, the opinions of other physicians, and with the record in general. The ALJ also said that Dr. Bornovali's opinions seemed to be based only on Plaintiff's subjective allegations of pain. The ALJ also discounted Dr. Bornovali's opinion on the grounds that he submitted a disabling RFC in May 2006 but had not seen Plaintiff since October 2005. Tr. 25.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed a timely complaint with this Court for review of the ALJ's decision denying his claim for benefits. Plaintiff asserted two related assignments of error. However, Plaintiff's basic contention is that the ALJ should have given more weight to Dr. Bornovali's opinion as a treating physician that he cannot engage in repetitive use of his hands. Had the ALJ included this limitation in developing his RFC, Plaintiff contends, he would have had to conclude that Plaintiff is disabled because he cannot perform the jobs identified by the vocational expert. Plaintiff is particularly aggrieved by the

ALJ's decision not to give Dr. Bornovali's May 2006 opinion more weight because he had not seen Plaintiff since October 2005 because the medical records show that he examined Plaintiff about six weeks before he provided this opinion.

In his Report and Recommendation, Magistrate Judge Black found that Dr. Bornovali's opinion was not entitled to controlling weight because it was contradicted by the opinions of other physicians and the record in general.  Magistrate Judge Black essentially concluded that the ALJ's error concerning Plaintiff's last office visit with Dr. Bornovali was harmless since he only saw Plaintiff once between October 2005 and issuing his opinion in May 2006.  In other words, Magistrate Judge Black apparently concluded that the Dr. Bornovali's opinion would not have been bolstered by the interim office visit the ALJ failed to note.  Magistrate Judge Black also determined that the ALJ properly took into consideration Plaintiff's manipulative limitations restricting him to sedentary exertional limitations with no reaching above shoulder level.  Magistrate Judge Black found that these limitations were supported by evidence in the record, such as the absence of a finding of nerve root impingement, Plaintiff's grip strength was only mildly weakened, Dr. Ossmann's opinion that his neuropathy was insufficient to apply for disability, and that he felt better and was able to use his hands more since he started taking Lyrica.  Accordingly,

Magistrate Judge Black concluded that the ALJ's decision was supported by substantial evidence and recommended that it be affirmed.

Plaintiff then filed timely objections to the Report and Recommendation which are now ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a

magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

Plaintiff's complaint and objections to the Report and Recommendation present the issue whether the ALJ properly applied the treating physician rule. As indicated, Plaintiff contends that the ALJ should have given more weight to Dr. Bornovali's opinions, with the consequent effect that he would have been determined to be disabled because his manipulative restrictions render him unable to perform the jobs identified by the vocational expert.

Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that either of these criteria have not been satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the treating source." Wilson v. Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004).

The Court first notes that Dr. Bornovali's opinion is not entitled to controlling weight because it is contradicted by substantial evidence in the record, principally Dr. Ossmann's opinion and treatment notes of his examinations of Plaintiff. Hickey-Haynes v. Barnhart, 116 Fed. Appx. 718, 723-24 (6th Cir. 2004) ("The regulation requires ALJs to look to the record as a whole-not just to medical opinions-to decide whether substantial evidence is inconsistent with a treating physician's assessment."). As indicated, Dr. Ossmann and Dr. Bornovali were essentially in agreement that Plaintiff has neuropathy and back pain. Dr. Ossmann's treatment notes, however, reflect that while Plaintiff's pain continued unresolved, he eventually obtained some relief with pain medication and that he had regained some strength in his hands. Dr. Ossmann, in contrast to Dr. Bornovali, also felt that Plaintiff's neuropathy was not disabling. Therefore, Dr. Bornovali's opinion is not entitled to controlling weight.

Although not raised by any party heretofore, it is not altogether clear to the Court why Dr. Ossmann is not considered a treating physician - and thus a physician whose opinion is

generally accorded great if not controlling weight[1] - since the record indicates that he treated Plaintiff for his impairments longer than Dr. Bornovali.

In any event, there was substantial evidence to support the ALJ's decision to reject Dr. Bornovali's opinions concerning Plaintiff's manipulative impairments.  As indicated, Dr. Ossmann's treatment notes indicate that Plaintiff had 5/5 strength in his upper extremities and that his left hand grip was only mildly weakened.  See, e.g., Mount v. Commissioner of Social Sec., No. 98-1907, 1999 WL 993903, at *8 (6th Cir. Oct. 20, 1999) (ALJ's decision that claimant had no significant restriction in function supported by substantial evidence where claimant had "fairly good" grip strength).  Moreover, Dr. Ossmann recorded that Plaintiff felt better on Lyrica and that he was able to use his hands more.  Dr. Ossmann also indicated that he did not believe that Plaintiff's neuropathy was disabling.  While the ALJ had discretion to reject Dr. Ossmann's opinion, he was also entitled to consider it in rendering his decision, particularly since it was in opposition to Dr. Bornovali's opinion that Plaintiff was not able to work.  See Maple v. Apfel, 14 Fed. Appx. 525, (6th Cir. 2001)("[T]he ALJ is not required to accept a treating physician's conclusory opinion on the ultimate issue of

---

[1] See White v. Commissioner of Social Sec., 572 F.3d 272, 286 (6th Cir 2009).

disability.") (emphasis added).  The ALJ noted that emergency room physicians generally returned Plaintiff to work with only a few temporary restrictions.  Finally, as the ALJ also noted, according to the medical expert, Dr. Lorber, while an EMG showed that Plaintiff has impaired sensation in his hands, an EMG does not measure weakness.  Dr. Lorber opined that despite the EMG results, Plaintiff still has the capacity to lift 20 pounds occasionally and 10 pounds frequently.  Tr. 309-10.  Therefore, there was substantial evidence supporting the ALJ's decision to give little weight to Dr. Bornovali's opinion.  While, as Plaintiff correctly argues, the ALJ erred in stating that Dr. Bornovali had not seen Plaintiff for about eight months before providing his May 2006 opinion, the Court agrees with Magistrate Judge Black that the fact that there was one office visit in that interim period does not substantially bolster Dr. Bornovali's opinion.  Therefore, the ALJ's erroneous statement was harmless error.

While the ALJ is required to include all of the claimant's limitations in his hypothetical to the vocational expert, he is not required to include limitations from opinions he has rejected.  <u>Pratt v. Commissioner of Social Sec.</u>, 72 Fed. Appx. 417, 419 (6th Cir. 2003).  Here, the ALJ had a substantial evidentiary basis for rejecting Dr. Bornovali's opinion.  Therefore, he was not required to include the manipulative

limitations listed by Dr. Bornovali in his hypothetical to the vocational expert. Hence, the ALJ's decision that Plaintiff is not disabled because he has the RFC to perform the jobs identified by the vocational expert was supported by substantial evidence.

## Conclusion

Magistrate Judge Black accurately analyzed the ALJ's decision in his Report and Recommendation. Therefore, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED.** The Court **ADOPTS** the Report and Recommendation. The ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and it is, therefore, **AFFIRMED. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date September 24, 2009             s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                                    Senior United States District Judge